[CERTIFIED TRANSLATION]

**EXHIBIT A**

SJ2020CV06156    11/16/2020    06:18:18 p.m.    Entry No. 1    Page 1 of 2

**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF JUSTICE**
**COURT OF FIRST INSTANCE**
**SUPERIOR COURT, SAN JUAN PART**
**JUDICIAL CENTER OF SAN JUAN**

**901**

| | |
|---|---|
| SALLY PÉREZ RODRÍGUEZ<br><br>PLAINTIFF<br><br>v.<br><br>AMERICAN AIRLINES, INC.<br><br>DEFENDANT | CIVIL NO.: **SJ2020CV** *06156*<br><br>Summary Employment Claim Procedure |

**SUMMONS**
**SUMMARY EMPLOYMENT CLAIM PROCEDURE ACT**

UNITED STATES OF AMERICA
THE PRESIDENT OF THE UNITED STATES
THE COMMONWEALTH OF PUERTO RICO

TO:                    AMERICAN AIRLINES, INC.
                 Name of the defendant being summoned

          LUIS MUÑOZ MARÍN AIRPORT, CAROLINA, PR
                 Address of the defendant being summoned

YOU ARE HEREBY served with a copy of the complaint filed against you, pursuant to Act No. 2 of October 17, 1961, as amended, and advised that you must file your answer to same in writing with the Court, through the Unified Case Management and Administration System (SUMAC, by its Spanish acronym), which you can access through the following electronic address: https://unired.ramajudicial.pr, unless you represent yourself, in which case you must file your responsive pleading with the court clerk's office, with proof of service thereof on the plaintiff's attorney, or the plaintiff, if the plaintiff appeared pro se, within ten (10) days of service of this summons, if the service occurred within the Judicial Region where the action was filed, and within fifteen (15) days, in any other case. You are hereby further advised that if you fail to comply with this, judgment will be entered against you, granting the relief sought, without further summoning or hearing you.

MR. ENRIQUE J. MENDOZA SÁNCHEZ, ESQ. / MR. ENRIQUE J. MENDOZA MÉNDEZ, ESQ.
                Name of plaintiff's attorney or the party,
                if the party does not have legal counsel
                          21143 / 8304
                Supreme Court number, if an attorney
                          P.O. BOX 9282

[ink stamp:                SAN JUAN, PUERTO RICO  00908-0282
  RECEIVED                         Address
**NOV 19 2020**                (787) 722-5522
REICHARD & CALAF P.S.C.     Telephone number; Fax number
(handwritten initial) (*1:16 p.m.*)]    mendozalo@yahoo.com
                          Email Address

                          [ink stamp: **NOV 17 2020**]

Issued under my signature and the Seal of the Court, on this_____    [ink stamp:
          [round ink stamp:                          **Griselda Rodríguez Collado**
COMMONWEALTH OF PUERTO RICO                    **Regional Clerk**
GENERAL COURT OF JUSTICE          _____
COURT OF FIRST INSTANCE                    Regional Clerk
SUPERIOR COURT, SAN JUAN PART]                **María Ocasio Rodríguez**
          K027 (illegible initials)          Name and Signature of
                              **Deputy Court Clerk**] (illegible scribble)
                              Deputy Court Clerk

[CERTIFIED TRANSLATION]

SJ2020CV06156    11/16/2020    06:18:18 p.m.    Entry No. 1    Page 2 of 2

## PROOF OF SERVICE BY PRIVATE INDIVIDUAL

I, [hw: *Carlos Soto Aponte*], do hereby state that I have the legal capacity required under Rule 4.3 of the Rules of Civil Procedure of Puerto Rico, and I certify that I served the summons and the complaint in the case of reference on [hw: *November 19*], 2020, in the following manner:

By personal delivery to the defendant at the following physical address: [hw: *CT Corp. Systems through Atty. Federico Calaf – Representative, CT Corp.*]
_____

Accessible in the immediate presence of the defendant, at the following physical address:
    [hw: *361 San Fco. Street    4ᵗʰ Floor*
        *San Juan, PR   00901-1748]*
_____

Leaving copies of the documents with an agent authorized by the defendant or designated by law to receive summonses, at the following physical address:
_____
_____
_____

The summons could not be served personally because:
_____
_____
_____
_____

## COSTS OF SERVICE
**$ _____**

## SUMMONS SERVER'S STATEMENT

I do hereby state under penalty of perjury, in accordance with the laws of the Commonwealth of Puerto Rico, that the information provided in the proof of service is true and correct.

AND IN WITNESS WHEREOF, I sign the foregoing in [hw: *San Juan*], Puerto Rico, this [hw: *19ᵗʰ*] of [hw: *November*], 2020.

_____[illegible signature]_____
(Summons Server's Signature)

Summons Server's Address:
_____
_____
_____

AFFIDAVIT NO.: _____

        Sworn to and signed before me by _____,
whose personal information is as stated above, whom I certify that I know _____
_____.
(personal knowledge, or, if not, identification through the supplemental means laid down in the Notary Act)

        In _____, Puerto Rico, on _____, 2020.

_____
NOTARY

[CERTIFIED TRANSLATION]

SJ2020CV06156    11/16/2020    06:18:18 p.m.    Entry No. 1    Page 1 of 9

**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF JUSTICE**
**COURT OF FIRST INSTANCE**
**SUPERIOR COURT, SAN JUAN PART**
**JUDICIAL CENTER OF SAN JUAN**

| | |
|---|---|
| SALLY PÉREZ RODRÍGUEZ | CIVIL NO.: _____ |
| PLAINTIFF | |
| V. | |
| AMERICAN AIRLINES, INC. | Summary Employment Claim Procedure |
| DEFENDANT | |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW the plaintiff, Sally Pérez Rodríguez, represented by the undersigned legal counsel, and very respectfully STATES, ALLEGES AND PRAYS:

1.      The plaintiff is Mrs. Sally Pérez Rodríguez ("Pérez"), whose residential and mailing address and telephone number are as follows: Number 62 de Diego Avenue, San Juan, Puerto Rico 00907; telephone number, (787) 525-2772.

2.      The defendant is American Airlines, Inc. ("AA"), a company in the airline industry that renders services in Puerto Rico, among other places, at the Luis Muñoz Marín International Airport in Carolina, Puerto Rico. Its Resident Agent is CT Corporation System, San Francisco Street, Number 361, Old San Juan, Puerto Rico 00901.

3.      The summary employment claim procedure laid down in Act 2-1961, as amended, 32 L.P.R.A. 3113 et seq. ("Act 2") is hereby invoked. Act 2 provides that legal claims may be filed in the Court of First Instance of the judicial district where the plaintiff resides or where the work was performed for the employer. In this case, the plaintiff resides in the judicial district of San Juan. Therefore, the Court of First Instance, Superior Court, San Juan Part, has jurisdiction to hear this case.

**Note: * Exempt from cancelling stamps, as this is a case under the summary employment claim procedure, Act No. 2 of October 17, 1961, as amended, 32 L.P.R.A. 3118 et seq.; _Valentín v. Housing Promoters, Inc._, 146 D.P.R. 712 (1998).**

[ink stamp:
         RECEIVED
         **NOV 19 2020**
REICHARD & CALAF P.S.C.
(handwritten initial) (*1:16 p.m.*)]

4.       Pérez worked for AA from January 1, 1989, to June 19, 2020. She held the position of Customer Services Manager and reported to Mr. José Rucabado, General Manager.

5.       The position of Customer Service Manager is very comprehensive. It includes tasks known as below-the-wing tasks, which refer to tasks performed in the area of the ramps, and tasks known as above-the-wing tasks, which refer to tasks performed at the terminals, such as the Ticket Center, the luggage area and interaction with Aerostar, Services Agreements (such as Antilles), and Transportation Security Administrator [sic] ("TSA") and exits of the airport.

6.       The responsibilities of the Customer Service Manager are to: (1) provide quality services and obtain the greatest possible customer satisfaction; (2) meet goals of profitability and control of expenses and costs; (3) ensure compliance with safety regulations, operational processes and applicable federal guidelines; (4) provide members of the team fair, reasonable and equitable treatment; (5) run an effective operation; (6) work with the employee union.

7.       Pérez always had an excellent job performance in all the positions she held at AA, very particularly the position of Customer Service Manager.

8.       During the period included from April 6, 2020, to June 2, 2020, Pérez was on administrative leave, during which she was paid 23% of her regular salary, at a rate of $9.80 per hour, that is, $1,698.66 monthly.

9.       At the end of May 2020, AA announced that it was going to implement a mass reduction of its workforce at the Luis Munoz Marín International Airport, which would involve 30% or more of its managerial employees. At the time, Mr. José Rucabado, AA Manager at the Luis Muñoz Marín Airport operation, and Mrs. Mildred Fuentes Viera, Airport Manager, held a telephone conference that was attended by the three (3) Customer Service Managers: Mrs. Sally Pérez, Mr. Felipe Otero and Mrs. Vanessa Sacarello; two (2) employees in clerical positions, namely: Mrs. Ana Carrión (Assistant of General Manager Mr. José Rucabado) and Mrs. Irma Matos (who had finance duties); and a level 2

managerial employee, Mrs. Maryl Mendoza. The agenda of the aforementioned meeting was to address the topic of AA's workforce reduction at the Luis Munoz Marín International Airport.

10.     At the meeting, AA Management confirmed that the company had announced, and would proceed with, a general, thirty percent (30%) reduction of its staff, but that the projection was that the reduction would be even greater, depending on the city and the flights to be reduced. It was never informed that new personnel would be recruited, as part of this process to downsize AA's staff at the Luiz Muñoz Marín International Airport. Nor was it ever informed that at least one Customer Service Manager position would be retained (as it in fact was). In fact, an employee with less seniority than Pérez was retained in said position. Furthermore, another, additional person was in fact recently recruited for a position of Customer Service Manager and AA is actively in the process of recruiting a third position of Customer Service Manager.

11.     What was informed at the time was that the company would offer voluntary benefits packages, but no compensation whatsoever for termination or severance pay under the law, as the terminations were justified by legitimate downsizing. Furthermore, they informed that employees who did not accept these benefits would not receive any additional payment or benefit whatsoever for their termination. We repeat, it was never informed that new personnel would be recruited after the resignations and terminations in question. Nor was it ever informed that at least one Customer Service Manager position would be retained (as it in fact was). In fact, an employee with less seniority than Pérez was retained in said position. Furthermore, another, additional person was in fact recently recruited for a position of Customer Service Manager, and AA is actively in the process of recruiting a third position of Customer Service Manager.

12.     Very specifically, on May 27, 2020, AA made an official announcement in writing, which, among other things, indicated: "Additionally, running a smaller airline means we will need a

3

[CERTIFIED TRANSLATION]

management and support staff team that is roughly 30% leaner."). This announcement clearly implies that additional personnel would not be recruited. Nor was it informed that at least one Customer Service Manager position would be retained (as it in fact was). In fact, an employee with less seniority than Pérez was retained in said position. Furthermore, another, additional person was in fact recently recruited for a position of Customer Service Manager, and AA is actively in the process of recruiting a third position of Customer Service Manager.

13.    It was always informed that the staff would be downsized, and that if she did not accept the benefits package, she would not obtain any other benefit, if she was terminated. Again, she was never told that there would be new recruitments, much less of personnel to perform her own duties and tasks. Nor was she informed that at least one Customer Service Manager position would be retained (as it in fact was). In fact, an employee with less seniority than Pérez was retained in said position. Furthermore, another, additional person was in fact recently recruited for a position of Customer Service Manager, and AA is actively in the process of recruiting a third position of Customer Service Manager.

14.    Pérez decided to opt for the voluntary benefits plan because she was convinced that based on what was implied by the announcements made by AA's Management, her position would be impacted by the staff reduction, and there would be no other viable employment opportunities for her there. Essentially, the benefits package consisted in being on administrative leave from June 19, 2020, to December 31, 2020, collecting thirty-three percent (33%) of her salary, at a rate of $12.94 per hour, that is, $2,243.00 monthly. The payment for these approximately five (5) months was of approximately $12,336.50. There certainly was no justification whatsoever for offering Pérez a benefits package of $12,336.50, if her position was not going to be eliminated (especially when, as we will see hereinbelow, her severance pay under Act 80 was of $229,976.17).

15.     The highest annual salary earned by Pérez during her last three (3) years at AA was $98,738.30 annually, (that is, $8,228.19, monthly, $1,899.00, weekly).

16.     Pérez's severance pay under the provisions of the Wrongful Termination Act, Act 80-1976, as amended, 29 L.P.R.A. 185, ("Act 80") amounts to a basic compensation of six (6) months of salary, namely: $49,369.15, and a progressive compensation equivalent to three (3) weeks' pay for every complete year of service, that is, 31 years, for the salary of 93 weeks x $1,899.00 per week = $176,607.00. The total severance pay is $229,976.17.

17.     As stated earlier, the voluntary benefits package consisted of 33% of her salary from June 19, 2020, to December 31, 2020, that is, $12,336.50.

18.     The voluntary package was offered to mitigate the effects of a justified termination. However, if at least one Customer Service Manager position was going to be maintained and additional personnel were going to be recruited to perform her duties, there was no need to approach Pérez about leaving her job, in exchange for a modest consideration. The mere fact that the offer was made implied that she would be terminated.

19.     Pérez accepted the voluntary benefits package because she was convinced that she was going to be terminated, and she did not know that her position would be maintained and new personnel would be recruited to perform her tasks and duties.

20.     The voluntary package did not require the execution of a Waiver and Release of Liability Agreement.

21.     It was after she accepted the voluntary benefit package that she was then required to sign a Release of Liability Agreement as a condition to pay her the benefits in question.

22.     The Waiver and Release of Liability Agreement did not expressly include a release from payment of the severance pay provided for under Act 80.

23.     In view of the representations made by AA's Management, it was reasonable to conclude that she was going to be terminated as part of the downsizing and, therefore, for good cause, and the offer

(though financially unattractive, namely $12,336.50, when the severance pay that Pérez was entitled to under the law was of $229,976.17) thus constituted fair and equitable consideration. The only other option was to be terminated and not receive anything. Furthermore, she did not know there would be job opportunities. The only thing that was discussed was the downsizing of AA's staff at the Luis Muñoz Marín Airport, much less did Pérez know (because it was concealed from her) that at least one Customer Service Manager position would be retained. In fact, an employee with less seniority than Pérez was retained in said position. Furthermore, another, additional person was in fact recently recruited for a position of Customer Service Manager, and AA is actively in the process of recruiting a third position of Customer Service Manager.

24.     Prior to accepting the voluntary benefits package and signing the Liability Agreement, Pérez was never told that her position would be maintained, or that new personnel would be recruited to assume her duties and tasks immediately after she was separated from employment with the company. Furthermore, the fact that personnel were going to be recruited to perform her work and duties is an additional reason why her termination also became wrongful (if the order of recruitment by seniority was not followed). In other words, Pérez not only had the right to be retained in her job, but, in the event that she was terminated, under Act 80, Pérez also had the right to be rehired if the same, or similar, services or work as the ones that she performed were necessary within six (6) months of her termination and personnel were going to be recruited to perform such tasks and duties. As we have seen, her services continued to be necessary, inasmuch as a Customer Service Manager position was maintained and additional personnel were immediately recruited to perform her tasks and duties. Nor was it informed that at least one Customer Service Manager position was going to be retained (as it in fact was). In fact, an employee with less seniority than Pérez was retained in said position. Furthermore, another, additional person was in fact recently recruited for a position of Customer Service Manager, and AA is

[CERTIFIED TRANSLATION]

actively in the process of recruiting a third position of Customer Service Manager.

25.     In fact, if AA's intent was to retain at least one Customer Service Manager position, and it needed the same or similar functions as the ones that Pérez performed (inasmuch as new, additional personnel was hired), then, AA should not even have offered to Pérez the benefits in question. Granting benefits due to the effects of the downsizing was not necessary if her position was not going to be affected by the downsizing. Everything that occurred demonstrates *a posteriori* that Pérez was induced to leave her job by hiding from her necessary information that was available to AA and by making representations that did not reflect the totality of the circumstances relevant here. Nor was it informed that at least one Customer Service Manager position was going to be retained. In fact, an employee with less seniority than Pérez was retained in said position. Furthermore, another, additional person was in fact recently recruited for a position of Customer Service Manager, and AA is actively in the process of recruiting a third position of Customer Service Manager.

26.     Then, Mr. José Rucabado, then General Manager, upon learning that at least one Customer Service Manager position would be maintained, after Pérez had already signed the voluntary benefits package, intervened for the acceptance of the voluntary benefits packages to be suspended and Pérez to be called back to work. Mr. Rucabado's claim was ignored. Mr. Rucabado was then terminated.

27.     It turns out that the same, or similar, duties as the ones that Pérez performed were not ultimately eliminated, and an additional, younger employee was recruited to perform Pérez's tasks and duties. Pérez accepted the voluntary benefits package in view of representations that reasonably implied that no Customer Service Manager position whatsoever was going to be maintained, and that there were no plans to recruit new personnel. It was deliberately concealed from her that a Customer Service Manager position was going to be maintained, and it was also concealed from her that the company intended to

recruit additional personnel to perform her duties. AA's actions were aimed at inducing Pérez to leave her job, pursuant to false representations and the deliberate concealment of the truth. The only reasonable option that Pérez had was to accept a modest voluntary benefits package in view of an imminent termination for which she would not receive any payment whatsoever.

28.    We repeat, if AA had not concealed its true intentions and had disclosed in good faith the totality of the circumstances that it had knowledge of, Pérez would not have agreed to leave her job in exchange for a modest benefits package.

29.    We hereby ask that Pérez be paid the severance pay that she is entitled to under Act 80.

30.    The release of liability signed by Pérez with AA is not a valid settlement agreement under Article 1716 of the Civil Code of Puerto Rico, 31 L.P.R.A. 4828.

31.    The consent given by Pérez was defective, because she gave consent through error, intimidation and fraud. Articles 1217 of the Civil Code of Puerto Rico, 31 L.P.R.A. 3402.

32.    The lack of valid consent on Pérez's part makes what was agreed upon null.

33.    Pérez's consent is defective because she was deliberately deceived and led to believe that she would be terminated. She was not informed that the intention was to open her position and/or duties that were the same or similar to the ones that she performed, once she had signed the Agreement. The fact that new personnel would be recruited was concealed from her. The only thing that was mentioned to her was that the workforce would be downsized. She was led to believe that if she did not accept the benefits plan, she would be terminated and would not have any benefit or right whatsoever. She was informed that there was just cause for the terminations. She was not informed that at least one Customer Service Manager position would be retained. In fact, an employee with less seniority than Pérez was retained in said position.

34.    Under Act 4.10 of Act 4-2017, 29 L.P.R.A. 185i, in order to validly settle the right to severance pay under Act 80, all of the requirements for a valid settlement agreement must be present. There is not

SJ2020CV06156    11/16/2020    06:18:18 p.m.    Entry No. 1    Page 9 of 9

a valid settlement agreement in this case. The consent is defective and the cause is insufficient. This renders the agreement null and consequently unenforceable.

35.    Furthermore, as we have seen, the Agreement does not include an express waiver of the severance pay laid down in Act 80.

WHEREFORE, we very respectfully pray that this Honorable Court grant this Complaint and consequently hold that Pérez is entitled to the benefit of the severance pay laid down in Act 80; that she was in fact induced, through false representations and dolus, to leave her job, in exchange for a voluntary benefits package; that the Waiver and Release of Liability Agreement is null, due to lack of valid consent and sufficient cause; and grant attorney's fees, costs and expenses of interests.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 16th of November 2020.

s/ Enrique J. Mendoza Sánchez
ENRIQUE J. MENDOZA SÁNCHEZ
RUA: 21143

s/ Enrique J. Mendoza Méndez
ENRIQUE J. MENDOZA MÉNDEZ
RUA: 8304

**MENDOZA LAW OFFICES**
P.O. Box 9282
San Juan, Puerto Rico 00908-0282
Tel.: (787) 722-5522; 5530; 5540
Fax: (787) 723-7057
mendozalo@yahoo.com

CERTIFICATION OF TRANSLATION

I, Carol G. Terry, a US-Court-Certified-Interpreter, Certificate No. 03-001, and translator with an MA in Translation from the University of Puerto Rico, do hereby certify that, to the best of my knowledge and abilities, the foregoing ELEVEN (11) PAGES are a true and correct translation of the original document in Spanish.

Carol Terry

Carol G. Terry

**Note: * Exempt from cancelling stamps, as this is a case under the summary employment claim procedure, Act No. 2 of October 17, 1961, as amended, 32 L.P.R.A. 3118 et seq.; *Valentín v. Housing Promoters Inc.*, 146 D.P.R. 712 (1998).**

**EXHIBIT A**

SJ2020CV06156 16/11/2020 06:18:18 pm Entrada Núm. 1 Página 1 de 2

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**    *901*
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**
**CENTRO JUDICIAL DE SAN JUAN**

SALLY PÉREZ RODRÍGUEZ

QUERELLANTE

v.

AMERICAN AIRLINES, INC.

QUERELLADO

CIVIL NÚM: **SJ2020CV 06156**

Procedimiento Sumario Laboral

**EMPLAZAMIENTO**
**LEY DE PROCEDIMIENTO SUMARIO DE RECLAMACIONES LABORALES**

ESTADOS UNIDOS DE AMÉRICA
EL PRESIDENTE DE LOS ESTADOS UNIDOS
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO

A:          AMERICAN AIRLINES, INC.
          Nombre de la parte querellada que se emplaza

          AEROPUERTO LUIS MUÑOZ MARIN, CAROLINA, PR
          Dirección de la parte querellada que se emplaza

POR LA PRESENTE, se le emplaza, con copia de la querella radicada en su contra al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, apercibiéndole que deberá presentar al Tribunal su contestación por escrito a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://unired.ramajudicial.pr, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la secretaria del tribunal; con constancia de haber servido copia de la misma al (a la) abogado(a) de la parte querellante o a esta si hubiere comparecido por derecho propio, dentro de diez (10) días de haber sido diligenciado este emplazamiento, si este se hiciere en la Región Judicial donde se promueve la acción y dentro de quince (15) días en los demás casos. Se le apercibe, además, que, si así no lo hiciere, se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle.

LCDO. ENRIQUE J. MENDOZA SÁNCHEZ / LCDO. ENRIQUE J. MENDOZA MÉNDEZ

Nombre del (de la) abogado(a) de la parte querellante, o de la parte,
si no tiene representación legal

21143 / 8304

Número ante el Tribunal Supremo, si es abogado(a)

P.O. BOX 9282

SAN JUAN, PUERTO RICO 00908-0282

Dirección

(787) 722-5522

Número de teléfono; número de fax

mendozalo@yahoo.com

Correo electrónico

17 NOV 2020

**RECEIVED**

NOV 19 2020

REICHARD & CALAF P.S.C.

P.N 1:16 pm

Expedido bajo mi firma y el sello del Tribunal, el _____ de _____ de _____.

Nombre del (de la)
Griselda Rodríguez Collado
Secretaria Regional

Por: _____

Nombre y Firma del (de la)
Maria Ocasis Rodriguez
Secretario(a) Auxiliar del Tribunal

K027

SJ2020CV06156 16/11/2020 06:18:18 pm Entrada Núm. 1 Página 2 de 2

## DILIGENCIAMIENTO POR PERSONA PARTICULAR

Yo, _Carlos Soto Aponte_, declaro tener capacidad legal conforme la Regla 4.3 de Procedimiento Civil de Puerto Rico, y certifico que el diligenciamiento del emplazamiento y de la querella del caso de referencia fue realizado por mí, el _14_ de _noviembre_ de 2020, de la siguiente forma:

Mediante entrega personal a la parte demandada en la siguiente dirección física: _C.T. Corp._ _Systems A traves de Lcdo. Federico (Alf Representante_ _C.T. Crp._

Accesible en la inmediata presencia de la parte demandada en la siguiente dirección física: _361 San Fco. Street 4th piso_ _San Juan P.R. 00901-1748._

Dejando copia de los documentos a un(a) agente autorizado(a) por la parte demandada o designada por ley para recibir emplazamientos en la siguiente dirección física:

_____
_____
_____

No se pudo diligenciar el emplazamiento personalmente debido a que _____

_____
_____
_____
_____
_____

## COSTOS DEL DILIGENCIAMIENTO
$_____

## DECLARACIÓN DEL (DE LA) EMPLAZADOR(A)

Declaro bajo pena de perjurio, conforme a las leyes del Estado Libre Asociado de Puerto Rico, que la información provista en el diligenciamiento del emplazamiento es verdadera y correcta.

Y PARA QUE ASÍ CONSTE, suscribo la presente en _San Juan_, Puerto Rico, hoy día _14_ de _noviembre_ de 2020.

_____
(Firma del (de la) Emplazador(a))

Dirección del (de la) Emplazador(a):
_____
_____
_____

AFIDÁVIT NÚM. _____

Jurado(a) y suscrito(a) ante mí por_____, de las circunstancias personales anteriormente mencionadas, a quien doy fe de conocer _____

_(conocimiento personal o, en su defecto, la acreditación del medio supletorio provisto por la Ley Notarial)_

En _____, Puerto Rico, hoy día _____ de _____ de 2020.

_____
NOTARIO (A)

SJ2020CV06156 16/11/2020 06:18:18 pm Entrada Núm. 1 Página 1 de 9

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**
**CENTRO JUDICIAL DE SAN JUAN**

| | |
|---|---|
| SALLY PÉREZ RODRÍGUEZ | CIVIL NÚM: _____ |
| QUERELLANTE | |
| v. | Procedimiento Sumario Laboral |
| AMERICAN AIRLINES, INC. | |
| QUERELLADO | |

## QUERELLA

AL HONORABLE TRIBUNAL:

COMPARECE la parte querellante, Sally Pérez Rodríguez, representada por su abogado que suscribe y muy respetuosamente, ALEGA, EXPONE Y SOLICITA:

1.      La parte querellante lo es la señora Sally Pérez Rodríguez ("Pérez"), cuya dirección residencial y postal y teléfono son los siguientes: Avenida de Diego Número 62, San Juan, Puerto Rico 00907 y teléfono (787) 525-2772.

2.      La parte querellada lo es American Airlines, Inc. ("AA"), es una empresa en la industria de líneas aéreas que ofrece sus servicios en Puerto Rico, entre otros, en el Aeropuerto Internacional Luis Muñoz Marín, Carolina, Puerto Rico. Su Agente Residente lo es CT Corporation System, Calle San Francisco, Número 361, Viejo San Juan, Puerto Rico 00901.

3.      Se invoca el procedimiento sumario laboral dispuesto en la Ley 2-1961, según enmendada, 32 L.P.R.A. 3113 y ss. ("Ley 2"). La Ley 2 dispone que las reclamaciones judiciales pueden presentarse ante la Sala de Tribunal de Primera Instancia del distrito judicial donde resida la querellante o donde se rindieron los trabajos para el patrono. En este caso la querellante reside en el distrito judicial de San Juan.  Por tanto, la Sala Superior de San Juan del Tribunal de Primera Instancia tiene competencia para atender este caso.

Nota: * Exento de cancelar sellos, pues se trata de un caso bajo el procedimiento sumario laboral, Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 L.P.R.A. 3118 y ss; *Valentín v. Housing Promoters, Inc.*, 146 D.P.R. 712 (1998).

RECEIVED

NOV 19 2020

REICHARD & CALAF P.S.C.

𝒫.𝒩  1:16 pm

4.     Pérez trabajó para AA desde el 1 de enero de 1989 hasta el 19 de junio de 2020.  Ocupaba la posición de "Customer Service Manager" y reportaba al Sr. José Rucabado, General Manager.

5.     La posición de "Customer Service Manager" es una bien comprensiva. Dicha posición incluye tareas conocidas como "below the wing" que se refiere al área de rampas y tareas conocidas como "above the wing" que se refiere a tareas en los terminales como Ticket Center; área de equipaje e interacción con Aerostar; Contratos de Servicios (como Antilles) y Transportation Security Administrator ("TSA") y salidas del aeropuerto.

6.     Las responsabilidades del "Customer Service Manager" son: (1) ofrecer un servicio de calidad y obtener la mayor satisfacción del cliente; (2) cumplir con las metas de rentabilidad y control de gastos y costos; (3) asegurarse del cumplimiento con la reglamentación de seguridad, los procesos operacionales y las guías federales aplicables; (4) proveer a los miembros de su equipo un trato justo, razonable y equitativo; (5) correr una operación efectiva; (6) trabajar con la unión de empleados.

7.     Pérez siempre se desempeñó a nivel de excelencia en todos los puestos ocupados en AA y muy especialmente, como "Customer Service Manager".

8.     Durante el periodo comprendido entre el 6 de abril de 2020 al 2 de junio de 2020 Pérez estuvo en una licencia administrativa, la cual se le pagaba el 23% de su salario regular, a una tarifa de $9.80 por hora, o sea, $1,698.66 mensuales.

9.     A fines del mes de mayo de 2020 AA anuncia que habría de implantar una reducción masiva de la plantilla en el Aeropuerto Internacional Luis Muñoz Marín, la cual sería de un 30% o más de los empleados gerenciales. En ese entonces, el Sr. José Rucabado, Gerente de AA en la operación del Aeropuerto Luis Muñoz Marín y la señora Mildred Fuentes Viera, Gerente de Aeropuerto, hacen una conferencia telefónica en la cual participan los tres (3) "Customer Service Manager", la señora Sally Pérez; el Sr. Felipe Otero y la señora Vanessa Sacarello; dos (2) empleadas de plazas Clericales, a saber: la señora Ana Carrión (Asistente del General Manager, Sr. José Rucabado) y la Sra. Irma

2

Matos (con funciones de finanzas) y un Gerencial Nivel 2, la señora Maryl Mendoza. La agenda de la mencionada reunión fue para abordar el tema de la reducción de la plantilla de AA en el Aeropuerto Internacional Luis Muñoz Marín.

10.    En tal reunión, la Gerencia de AA confirma que la empresa anunció y procederá con una reducción general de empleo de un treinta por ciento (30%) de la plantilla, pero que la proyección es que la reducción habría de ser aún mayor dependiendo de la ciudad y los vuelos a ser reducidos. Nunca se informó el reclutamiento de nuevo personal como parte del proceso de reducir la plantilla de AA en el Aeropuerto Internacional Luis Muñoz Marín. Tampoco se informó que se retendría (como efectivamente ocurrió) al menos una posición de "Customer Service Manager". De hecho, se retuvo en dicha posición a un empleado de menos antigüedad que Pérez. Además, recientemente se reclutó efectivamente otra persona adicional a una posición de Customer Service Manager y AAA se encuentra activamente en el proceso de reclutar una tercera posición de Customer Service Manager.

11.    En ese momento, se informó que se estarían ofreciendo unos paquetes de beneficios voluntarios y que no se estaría ofreciendo indemnización alguna por despido o mesada en ley, pues se trataba de despidos justificados por una reducción legítima de empleo. Además, informaron que el empleado que no aceptara estos beneficios no recibiría pago o beneficio adicional alguno a su despido. Repetimos, nunca se informó que habría el reclutamiento de nuevo personal luego de las renuncias y los despidos. Tampoco se informó que se retendría (como efectivamente ocurrió) al menos una posición de "Customer Service Manager". De hecho, se retuvo en dicha posición a un empleado de menos antigüedad que Pérez. Además, recientemente se reclutó efectivamente otra persona adicional a una posición de Customer Service Manager y AAA se encuentra activamente en el proceso de reclutar una tercera posición de Customer Service Manager.

12.    Muy específicamente, el 27 de mayo de 2020 AA hace un anuncio oficial por escrito que, entre otras cosas, indica: "Additionally, running a smaller

3

airline means we will need a management and support staff team that is roughly 30% leaner"). Dicho anuncio claramente implica que no se reclutaría personal adicional. Tampoco se informó que se retendría (como efectivamente ocurrió) al menos una posición de "Customer Service Manager". De hecho, se retuvo en dicha posición a un empleado de menos antigüedad que Pérez. Además, recientemente se reclutó efectivamente otra persona adicional a una posición de Customer Service Manager y AAA se encuentra activamente en el proceso de reclutar una tercera posición de Customer Service Manager.

13.   Siempre se indicó que habría reducción de empleados y que si no aceptaba el paquete de beneficios no obtendría ningún otro beneficio de ser despedida. Nuevamente, nunca se le dijo que habrían nuevos reclutamientos y mucho menos para realizar sus funciones y tareas. Tampoco se informó que se retendría (como efectivamente ocurrió) al menos una posición de "Customer Service Manager". De hecho, se retuvo en dicha posición a un empleado de menos antigüedad que Pérez. Además, recientemente se reclutó efectivamente otra persona adicional a una posición de Customer Service Manager y AAA se encuentra activamente en el proceso de reclutar una tercera posición de Customer Service Manager.

14.   Pérez optó por acogerse al plan de beneficios voluntarios bajo el convencimiento de que a tenor con lo implicado por los anuncios de la Gerencia de AA su posición habría de ser impactada por la reducción de empleo y que no habrían oportunidades alternas de empleo viables para ella. En esencia, el plan de beneficio era estar en una la licencia administrativa del 19 de junio de 2020 al 31 de diciembre de 2020, cobrando un treinta y tres porciento (33%) del salario a una tarifa de $12.94 por hora, o sea, $2,243.000 mensuales. El pago por estos aproximados cinco (5) meses era de aproximadamente de $12,336.50. Ciertamente, no había justificación alguna para ofrecer a Pérez un paquete de beneficios de $12,336.50 si su posición no se iba a eliminar (máxime cuando, como veremos más adelante, su mesada bajo la Ley 80 era de $229,976.17).

4

15.   El salario anual más alto devengado por Pérez en sus últimos tres (3) años en AA fue de $98,738.30 anual (o sea, $8,228.19 mensual, $1,899.00 semanal).

16.   La mesada de Pérez bajo las disposiciones de la "Ley de Despidos Injustificados", Ley 80-1976, según enmendada, 29 L.P.R.A. 185ª, ("Ley 80") asciende a una indemnización básica de seis (6) meses de salarios, a saber: $49,369.15 y una indemnización progresiva equivalente al salario de tres (3) semanas por cada año completo de servicios, o sea 31 años, para el salario de 93 semanas x $1,899.00 por semana = $176,607.00. El total de la mesada es de $229,976.17.

17.   Como ya vimos, el paquete de beneficios voluntarios fue del 33%, de salario del 19 de junio de 2020 hasta el 31 de diciembre de 2020, o sea $12,336.50.

18.   El paquete voluntario se ofreció para mitigar los efectos de un despido justificado.   Sin embargo, si se iba a mantener al menos una posición de "Customer Service Manager" y se iba a reclutar personal adicional para realizar sus funciones no había la necesidad de acercarse a Pérez para dejar su empleo a cambio de una modesta prestación. El hecho de mero ofrecimiento implicaba que se le despediría.

19.   Pérez aceptó el paquete de beneficios voluntarios bajo el convencimiento de que sería despedida y desconociendo que su posición se mantendría y que se reclutaría nuevo personal para hacer sus tareas y deberes.

20.   El paquete voluntario no requería el suscribir un Acuerdo de Relevo de Responsabilidad.

21.   Luego de aceptar el paquete voluntario de beneficio, entonces fue que se le requirió el suscribir un Acuerdo de Relevo de Responsabilidad como condición al pago de los beneficios en cuestión.

22.   El Acuerdo de Relevo de Responsabilidad no incluía expresamente un relevo de pago de la mesada bajo la Ley 80.

23.   Ante las representaciones de la Gerencia de AA lo razonable era concluir su despido por reducción de empleo y por tanto, por justa causa, el ofrecimiento

5

resultaba (aunque poco atractivo económicamente, a saber $12,336.50, cuando la mesada en ley de Pérez es de $229,976.17) ser entonces una contraprestación justa y equitativa. La alternativa era ser despedida y no recibir nada. Además, desconocia que habria oportunidades de empleo. Sólo se habló de la reducción de la plantilla de AA en el Aeropuerto Luis Muñoz Marin. Pérez mucho menos conocia (pues se le ocultó) que al menos se retendria una posición de "Customer Service Manager". De hecho, se retuvo en dicha posición a un empleado de menos antigüedad que Pérez. Además, recientemente se reclutó efectivamente otra persona adicional a una posición de Customer Service Manager y AAA se encuentra activamente en el proceso de reclutar una tercera posición de Customer Service Manager.

24. A Pérez previo a aceptar el paquete de beneficios voluntarios y firmar el Acuerdo de Responsabilidad nunca se le indicó que se mantendria su plaza, ni que se reclutaría personal nuevo para asumir sus funciones y tareas inmediatamente luego de su desvinculación con la empresa. Además, si habría reclutamiento de personal para hacer sus labores y funciones por tal motivo adicional se convertía también en injustificado su despido, (si no se seguia el orden de reclutamiento por antigüedad). Dicho en otras palabras, Pérez no tan solo tenía derecho a ser retenida en su empleo, sino que de Pérez haber sido despedida tenía derecho bajo la Ley 80 a ser reempleada si los servicios o labores iguales o similares a las que ella desempeñaba eran necesarias dentro de los seis (6) meses subsiguientes a su despido y se iba a reclutar personal para realizar tales tareas y funciones. Como hemos visto, sus servicios continuaron siendo necesarios al punto de mantener una posición de "Customer Service Manager" y de reclutarse inmediatamente personal adicional para realizar sus tareas y funciones. Tampoco se informó que se retendria (como efectivamente ocurrió) al menos una posición de "Customer Service Manager". De hecho, se retuvo en dicha posición a un empleado de menos antigüedad que Pérez. Además, recientemente se reclutó efectivamente otra persona adicional a una posición de Customer Service Manager y AAA se

6

encuentra activamente en el proceso de reclutar una tercera posición de Customer Service Manager.

25.     De hecho, si la intención de AA era retener al menos una posición de "Customer Service Manager" y además, tener necesidad de funciones iguales o similares a las realizadas por Pérez (al punto de reclutar nuevo personal adicional), entonces, AA no debió ni tan siquiera ofrecérsele a Pérez los beneficios en cuestión. El extenderle los beneficios por efectos de la reducción de personal no era necesario si su posición no iba a ser afectada por la reducción de empleo. Todo lo ocurrido demuestra *a posteriori* que Pérez fue inducida a dejar su empleo mediante ocultamiento de información necesaria y disponible a AA y además, mediante representaciones que no reflejaban la totalidad de las circunstancias aquí relevantes. Tampoco se informó que se retendría al menos una posición de "Customer Service Manager". De hecho, se retuvo en dicha posición a un empleado de menos antigüedad que Pérez. Además, recientemente se reclutó efectivamente otra persona adicional a una posición de Customer Service Manager y AAA se encuentra activamente en el proceso de reclutar una tercera posición de Customer Service Manager.

26.     El Sr. José Rucabado, Gerente General, entonces, al advenir en conocimiento de que se mantendría al menos una posición de "Customer Service Manager" y que además una vez Pérez suscribiera el paquete de beneficios voluntarios, entonces, interviene para que no le den curso a la aceptación de los paquetes de beneficios voluntarios y se llamara a Pérez a su empleo. El reclamo del Sr. Rucabado fue ignorado. El Sr. Rucabado fue entonces despedido.

27.     Resulta que las funciones iguales o similares a las que Pérez realizaba no fueron finalmente eliminadas y se reclutó persona adicional más joven para realizar las tareas y funciones de Pérez. Pérez aceptó el paquete de beneficios voluntarios ante representaciones que razonablemente implicaban que no se mantendría posición alguna de "Customer Service Manager" y además, que no se planeaban nuevos reclutamientos. Deliberadamente se le ocultó que se mantendría una posición de "Customer Service Manager" y, además, se le

ocultó que se proyectaba reclutar personal adicional para realizar sus funciones. Los actos de AA fueron dirigidos a inducir a Pérez a dejar su empleo bajo falsas representaciones y deliberado ocultamiento de la verdad. La única alternativa razonable de Pérez era aceptar un modesto paquete voluntario de beneficios ante un despido inminente respecto al cual no recibiría pago alguno.

28.    Repetimos, si AA no hubiese ocultado sus verdaderas intenciones y hubiese divulgado de buena fe las circunstancias totales conocidas, Pérez no hubiese aceptado irse de su empleo a cambio de un modesto paquete de beneficios.

29.    Solicitamos se le indemnice a Pérez la mesada correspondiente bajo la Ley 80.

30.    El relevo de responsabilidad firmado por Pérez con AA no es un contrato de transacción válido a tenor en el Artículo 1716 del Código Civil de Puerto Rico, 31 L.P.R.A. 4828.

31.    El consentimiento prestado por Pérez está viciado, pues fue prestado por error, intimidación y dolo. Artículos 1217 del Código Civil de Puerto Rico, 31 L.P.R.A. 3402.

32.    La ausencia de un consentimiento válido de Pérez produce la nulidad de lo acordado.

33.    El consentimiento prestado por Pérez está viciado porque a ella deliberadamente se le engañó haciéndole creer que se le despediría. No se le informó que la intención era abrir su posición y/o funciones iguales o similares a las desempeñadas por ella una vez hubiese firmado el Acuerdo. Se le ocultó que se reclutaría nuevo personal. Sólo se le habló de reducciones de empleo. Se le dio a entender que si no aceptaba el plan de beneficios se le despediría y no tendría beneficio o derecho alguno. Se le informó que los despidos eran por justa causa. Tampoco se informó que se retendría al menos una posición de "Customer Service Manager". De hecho, se retuvo en dicha posición a un empleado de menos antigüedad que Pérez.

34.    Bajo el Act.4.10 de la Ley 4-2017, 29 L.P.R.A. 185i, para poderse transigir válidamente el derecho a la mesada bajo la Ley 80 tienen que estar presente

8

todos requisitos de un contrato de transacción válido. Aquí no hay un contrato de transacción válido. El consentimiento está viciado y no hubo suficiente causa. Ello hace nulo el acuerdo y por ende, inexigible.

35. Además, como ya hemos visto, el Acuerdo no incluye una renuncia expresa a la mesada dispuesta en la Ley 80.

POR TODO LO CUAL, se solicita muy respetuosamente del Honorable Tribunal el que declare con lugar esta Querella y en su consecuencia adjudique que a Pérez le corresponda el beneficio de la mesada dispuesta en la Ley 80; que fue efectivamente inducida con falsas representaciones y dolo a dejar su empleo a cambio de un paquete de beneficios voluntarios; que el Acuerdo de Relevo de Responsabilidad es nulo por ausencia de consentimiento válido y suficiente causa, y se concedan honorarios de abogados, costas y gastos de intereses.

RESPETUOSAMENTE SOMETIDO.

En San Juan, Puerto Rico, a 16 de noviembre de 2020.

f/ Enrique J. Mendoza Sánchez
ENRIQUE J. MENDOZA SÁNCHEZ
RUA: 21143

f/ Enrique J. Mendoza Méndez
ENRIQUE J. MENDOZA MÉNDEZ
RUA: 8304

**MENDOZA LAW OFFICES**
P.O. Box 9282
San Juan, Puerto Rico 00908-0282
Tels. (787) 722-5522; 5530; 5540
Fax. (787) 723-7057
mendozalo@yahoo.com


Nota: * Exento de cancelar sellos, pues se trata de un caso bajo el procedimiento sumario laboral, Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 L.P.R.A. 3118 y ss; *Valentín v. Housing Promoters, Inc.*, 146 D.P.R. 712 (1998).